■ SAGE REALTY CORPORATION et al., Appellants, v PROSKAUER ROSE L. L. P. et al., Respondents, et al., Defendant. [675 NYS2d 14] —Order, Supreme Court, New York County (Sheila Abdus-Salaam, J.), entered April 10, 1997, applying defendants' motion to dismiss the complaint and impose sanctions to the amended complaint, and granting said motion to the extent of dismissing the second, third, fourth and fifth causes of action and imposing sanctions of $5,000 against plaintiffs and their attorneys, unanimously modified, on the law, to reinstate the second and fifth causes of action, vacate the sanctions and dismiss the complaint against the individual defendants, and otherwise affirmed, without costs. Order, same court and Justice, entered August 27, 1997, denying plaintiffs' motion for renewal and reargument on the merits and partially granting defendants' motion for a protective order, unanimously modified, on the law and the facts, to deny the protective order except as to the document request concerning defendants-respondents' representation of defendant Nomura (not a party to this appeal), and otherwise affirmed, without costs.

The corporate plaintiffs are a group of real estate agencies controlled by the individual plaintiffs Melvyn and Robert Kaufman. The individual defendants-respondents are partners in defendant-respondent law firm Proskauer Rose L. L. P. (defendant or Proskauer). In 1994, plaintiffs retained Proskauer in connection with a complex restructuring of plaintiffs' ownership interests in various New York properties and a related $175 million mortgage financing transaction with Nomura Asset Capital Corporation and Nomura Securities (Nomura).

Proskauer's work on these transactions naturally generated extensive documentation.

In early 1996, some months after the above-mentioned transactions were completed, plaintiffs had a major disagreement with Proskauer and replaced that firm with other counsel. Plaintiffs asked Proskauer to turn over all of its files regarding the financing and restructuring matters. However, Proskauer refused to produce a substantial number of the documents listed on its index, including contract drafts, legal memoranda, correspondence and conference negotiation notes.

Plaintiffs first commenced a special proceeding to recover the remaining documents. In *Matter of Sage Realty Corp. v Proskauer Rose Goetz & Mendelsohn* (235 AD2d 355), this Court upheld the IAS Court's decision in favor of Proskauer. However, on December 2, 1997, the Court of Appeals reversed (91 NY2d 30). It held that, except where the disclosure would violate the attorney's duty of confidentiality owed to a third party or otherwise imposed by law, the former client has a right to the work product from completed legal matters (*supra*, at 36-37).

Meanwhile, in November 1996, while the appeal from the special proceeding was still pending in this Court, plaintiffs commenced the instant plenary action against Proskauer. After defendants filed a motion to dismiss, plaintiffs filed an amended complaint. The first amended complaint alleged five causes of action against Proskauer:* (1) legal malpractice; (2) breach of fiduciary duty; (3) breach of contract; (4) fraudulent or negligent misrepresentation of its expertise; and (5) fraudulent non-disclosure of intent to withhold client documents.

These claims were based on the following facts and contentions: Given the uncertainty in the law as to the scope of a firm's duty to turn over client files, Proskauer allegedly should have told plaintiffs at the outset that if plaintiffs retained Proskauer to work on the Nomura transaction, Proskauer would have sole discretion to determine what files would be released to plaintiffs when the deal was done. In addition, plaintiffs were allegedly not kept informed of changes in the loan documents until after the closing, leading plaintiffs to pledge more collateral than was commercially reasonable or intended. In particular, the closing documents provided for fee mortgages, whereas plaintiffs had told Proskauer that they preferred leasehold mortgages. Finally, plaintiffs alleged some

---

* Plaintiffs also asserted a sixth and seventh cause of action against Nomura, with which this appeal is not concerned.

serious undisclosed conflicts of interest. While Proskauer was negotiating the refinancing with Nomura on plaintiffs' behalf, it did not tell plaintiffs that Proskauer partner Brodsky was soliciting business from Nomura as a client in an unrelated matter. Nor did Proskauer reveal that in this other matter, its co-counsel was the same firm (Cadwalader) that represented Nomura in Nomura's transaction with plaintiffs. In 1996, Proskauer also appeared as counsel for a defendant in an antitrust action commenced by plaintiffs, never received a waiver of this conflict and refused plaintiffs' request that it resign from representing this antitrust defendant. Plaintiffs feared that Proskauer would use the undisclosed files from the instant case to benefit these other Proskauer clients, especially Nomura, whose interests were adverse to plaintiffs'.

Proskauer asked the court to treat its previous dismissal motion as directed towards the amended complaint. In its decision on the motion, the court stated that the plaintiffs had agreed to this treatment, a contention that plaintiffs disputed for the first time in their subsequent motion for renewal and reargument.

On April 10, 1997, the IAS Court dismissed the third and fourth causes of action as redundant of the malpractice cause of action. It also dismissed the second and fifth causes of action as barred by res judicata and collateral estoppel, based on this Court's affirmance of Proskauer's victory in the special proceeding. Plaintiffs were directed to serve a second amended complaint deleting the dismissed causes of action. The court imposed sanctions of $5,000 against them and their counsel, finding that the second and fifth causes of action were brought primarily to harass defendants.

The following week, plaintiffs served a document request on Proskauer. All 22 requested categories of documents directly related to the instant action, or to Proskauer's representation of Nomura during the period when it also represented plaintiffs in the instant action. The period covered by most of the requests was from December 1993, when plaintiffs and Proskauer negotiated a retainer agreement, to February 1996, when they retained new counsel. Proskauer moved for a protective order.

While Proskauer's motion for a protective order was still pending, plaintiffs moved for renewal and reargument of the April 10 order that had dismissed four of their claims and imposed sanctions. Upon reargument, in an order dated August 27, the IAS Court adhered to its prior decision, and also granted Proskauer's motion for a protective order with respect

to several categories of documents. The precluded document categories mainly encompassed Proskauer's correspondence with plaintiffs, the Nomura entities, Cadwalader, and various rating agencies involved in the refinancing transaction, for the period of Proskauer's representation of plaintiffs, and documents concerning Proskauer's representation of Nomura on other matters during this period. Request number 22 was for Proskauer's billing records for time billed to the Nomura entities.

The motion court erred in dismissing the second and fifth causes of action, in imposing sanctions and in granting the protective order, except with respect to document request number 22.

At the outset, we note that the motion court properly applied the dismissal motion to plaintiffs' first amended complaint. While the lower court cases are in conflict over whether the filing of an amended pleading automatically abates a motion to dismiss that was addressed to the original pleading (*compare, Sholom & Zuckerbrot Realty Corp. v Coldwell Banker Commercial Group*, 138 Misc 2d 799, 801, *with Gonzalez v Mather Mem. Hosp.*, 147 Misc 2d 1082, 1084), we prefer the rule set forth in *Sholom* that the moving party has the option to decide whether its motion should be applied to the new pleadings. This approach also finds support in Siegel, Practice Commentaries (McKinney's Cons Laws of NY, Book 7B, CPLR C3211:65, at 94).

Procedurally, the instant case resembles *Matter of D'Addario v McNab* (73 Misc 2d 59, 61), in which the court declared its intention to treat the motion to dismiss as directed to the amended complaint. Since plaintiff's attorney, who was present, made no objection at the time, this treatment was proper. Here, plaintiffs' counsel was certainly present at this hearing and fully argued the issues in dispute without contemporaneously objecting to the court's treatment of the dismissal motion, thus satisfying any due process concerns.

Turning now to the merits of the IAS Court's April 10 and August 27 orders, the court properly dismissed the third and fourth causes of action (for breach of contract and for fraudulent misrepresentation of legal expertise, respectively) as duplicative of the first cause of action for malpractice. While it is true that a breach of contract claim need not be based on an express promise to the client (*Santulli v Englert, Reilly & McHugh*, 78 NY2d 700, 706), a breach of contract claim premised on the attorney's failure to exercise due care or to abide by general professional standards is nothing but a redundant

pleading of the malpractice claim (*Senise v Mackasek*, 227 AD2d 184, 185). Since plaintiffs did not allege that Proskauer breached a promise to achieve a specific result, their breach of contract claim was insufficient (*Saveca v Reilly*, 111 AD2d 493, 495). The fraud claim was equally duplicative of plaintiffs' malpractice claim, which was based on the same alleged acts of nondisclosure and misrepresentation (*Spinosa v Weinstein*, 168 AD2d 32, 36).

However, the court was wrong to dismiss the second and fifth causes of action, which were, respectively: Proskauer's failure to disclose and remedy conflicts of interest that were exacerbated by its retention of the disputed files; and the firm's failure to disclose, before allowing plaintiffs to retain as counsel, that it would withhold these files when the transaction was done. The motion court mistakenly deemed these causes of action to be barred by claim preclusion and issue preclusion, based on the outcome of the prior special proceeding.

Res judicata only bars subsequent litigation "where the same foundation facts serve as a predicate for each proceeding" (*Matter of Reilly v Reid*, 45 NY2d 24, 30). Similarly, collateral estoppel prevents a party from re-litigating an issue that was "necessarily raised and decided" in the previous action (*Gramatan Home Investors Corp. v Lopez*, 46 NY2d 481, 485). Like the special proceeding, the dismissed second and fifth claims involved the improper retention of files, but also entailed more extensive factual allegations that were not, and could not have been, addressed in the special proceeding, both because of the proceeding's limited nature and because certain facts involving Proskauer's conflicts of interest were not known to plaintiffs at that time. Preclusion should, therefore, not apply (*see, Liu v New York City Police Dept.*, 216 AD2d 67, 68, *lv denied* 87 NY2d 802, *cert denied* 517 US 1167).

In any event, now that this Court's decision in the special proceeding has been reversed by the Court of Appeals, it can have no preclusive effect (*Jewett Homes v Ciardiello*, 39 AD2d 581). A decision upon which no formal judgment has been entered is ineffective as a bar to subsequent proceedings. A vacated decision accordingly "lacks finality and cannot be given collateral estoppel effect" (*Ruben v American & Foreign Ins. Co.*, 185 AD2d 63, 65; *see also, Pires v Frota Oceanica Brasileira*, 240 AD2d 324).

Since the second and fifth causes of action were erroneously dismissed, plaintiffs should not have been sanctioned for raising and persistently advancing these claims. The record does

not contain facts to support the motion court's summary finding that plaintiffs intended harassment thereby. The sanction should therefore be vacated.

In light of the ruling by the Court of Appeals, the protective order should also be vacated, except as to request number 22, which sought confidential billing records sent by Proskauer to Nomura. Plaintiffs merely need proof that Proskauer represented Nomura during the relevant time period, which can be obtained without impinging on Nomura's attorney-client privilege. Contrary to Proskauer's contentions, all of the other document requests were limited to a relatively brief time frame and specific subject matter directly connected to this litigation. The burden of showing that discovery is improper is on the party seeking a protective order (*Roman Catholic Church of the Good Shepherd v Tempco Sys.*, 202 AD2d 257, 258). Proskauer's conclusory allegations of overbreadth did not satisfy its burden of showing that the remainder of the requested disclosure would be improper. Concur—Sullivan, J. P., Rosenberger, Rubin and Williams, JJ.